UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

PATRICIA A. WILLIAMS,

                        Plaintiff(s),

v.

ARIA RESORT & CASINO, LLC,

                        Defendant(s).

Case No. 2:17-CV-1484 JCM (VCF)

ORDER

Presently before the court is Aria Resort & Casino, LLC's ("Aria") motion for summary judgment. (ECF No. 34). No response has been filed, and the time to do so has passed.

Also before the court is Aria's amended motion for summary judgment. (ECF No. 36). Plaintiff Patricia Williams ("Williams") filed a response (ECF No. 41), to which Aria replied (ECF No. 42).

**I.    Facts**

This civil rights action arises out of alleged instances of race and gender discrimination faced by Williams prior to her termination from Aria in January 2016. (ECF No. 1). Unless otherwise noted, the following facts are undisputed[1]:

---

[1] Federal Rule of Civil Procedure 56(e) provides:

    If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

    . . .

    (2) *consider the fact undisputed* for purposes of the motion;

    (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or

Williams, who is a mixed-race black woman, was hired as a cook in Aria's in-room dining department ("IRD") in November 2009. (ECF No. 36 at 5). Thereafter, between May 2010 and July 2014, Williams was disciplined on seven different occasions for her various violations of Aria's employee code of conduct. *See* (ECF No. 36-2 at 8–30). These disciplinary actions included verbal warnings, written warnings, a one-day suspension, and one three-day suspension—all pursuant to Aria's practice of imposing "progressive discipline," as mandated by its collective bargaining agreement with the culinary union.[2] (ECF No. 36 at 5).

On or about February 9, 2015, Williams went to speak with Aria's employee relations manager, Todd Owen ("Owen"), to inquire about her seniority and the potential for her to transfer to the new TMobile Arena when it opened. (ECF No. 36-1 at 69). After discussing Williams' seniority, Owen asked her if she was aware of any incidents in IRD that would be considered misconduct. (ECF No. 36-1 at 69). At the time, Owen had been investigating a complaint lodged by one IRD employee against another. *Id.* at 70.

While Williams did not have any information to provide regarding the subject of Owen's inquiry, Williams did report that one of her coworkers, George Reed ("Reed"), had been making vulgar and sexualized comments in the workplace. *Id.* Owen then asked Williams to send him an email detailing the inappropriate behavior. *Id.* When Williams expressed concern that she did not want to get anyone in trouble, Owen assured her that her statement would be "strictly confidential." *Id.*

On February 10, 2015, Williams sent Owen an email describing incidents in which employees used profanity and engaged in horseplay and sexualized conversations. (ECF No. 36-2 at 33). The email did not describe any incidents regarding Williams' race or ethnicity and did not assert that any of the reported sexualized comments had been made to her or about her. *Id.*

---

. . .

Fed. R. Civ. P. 56(e) (emphasis added).

[2] The incidents which resulted in disciplinary action occurred in May 2010, February 2011, April 2011, June 2011, November 2011, May 2014, and July 2014. (ECF No. 36-2 at 8–40).

However, the email went on to state: "I have had two different male cooks swipe my derriere as they passed by me as I was working on my station."³ *Id.*

During the course of his investigation, Owen and his team met with all IRD employees, none of whom corroborated the allegations made by Williams in her February 10, 2015, email. (ECF No. 36-1 at 26). Where violations were confirmed as to other employees, however, disciplinary action was taken. (ECF No. 36-2 at 82). As an additional precaution, Owen held pre-shift meetings in IRD to remind employees of Aria's policies and how to report concerns or inappropriate conduct. (ECF No. 41-15 at 69–70). Aria also conducted in-person training sessions regarding harassment for all IRD employees. *Id.* (ECF No. 36-1).

On April 15, 2015, while working their shifts, Williams and Reed engaged in a verbal altercation that resulted in both employees receiving "last and final warnings."⁴ (ECF No. 36-2 at 53–55). Just prior to the altercation, Reed had opened a cooling drawer in the kitchen that was situated directly behind Williams, at which point Williams asked Reed to step to the side, so the two wouldn't "bump and touch each other." (ECF No. 36-1 at 63). According to post-incident written statements by Reed, Williams, and other employees who were present at the time, Reed and Williams began arguing loudly in the kitchen, which drew the attention of the chef on duty who separated the two by sending Reed to the chef's office. (ECF No. 36-2 at 36, 38–40).

The day after the incident with Reed, on April 16, 2015, Williams was called to the office of Human Resources Business Partner Frank Quezada ("Quezada") to discuss the incident. (ECF No. 36-1 at 51). At this meeting, Williams disclosed to Quezada a separate incident involving co-workers Reed, Guadalupe Jiminez ("Jiminez"), Jeffrey Baptista ("Baptista"), and Fanghao Tian ("Tian"). (ECF No. 36-1 at 51). According to Williams, she overheard these co-workers

---

³ Williams alleges that her co-worker, Jeffrey Baptista, grazed his fingers across her buttocks while passing behind her in the kitchen twice in the same evening in early 2013. (ECF No. 36-1 at 58). Williams alleges a second, similar incident involving a different co-worker, Guadalupe Jiminez, which occurred in early 2015. *Id.* at 59.

⁴ The "last and final warnings" received by Reed and Williams specifically warned that "[a]ny future violations that are [the] same or similar in nature will result in Suspension Pending Investigation with possible loss [of] employment." (ECF No. 36-2 at 53-55).

discussing her skin and eye color and questioning how she could be black if her skin is so light. *Id.* Baptista is alleged to have responded that her skin was light because she was a "mutt." *Id.*

Following the April 15, 2015, incident, Williams was not scheduled to work the same shift as Reed, and the two never had any further interactions. (ECF No. 36-1 at 104–105).

Thereafter, on December 1, 2015, Williams engaged in another verbal altercation with a different co-worker, Jiminez. Williams had picked up a ticket for a food order off the printer, and when she realized that the order was for Jiminez, she hung the ticket on Jiminez's station. (ECF No. 36-1 at 96–99). The parties dispute what happened next. Williams alleges that Jiminez got angry and began yelling at her for touching his ticket. *Id.* at 98. Other employees who were present at the time reported, via written statements to management, that Williams began to yell at Jiminez and told him to "shut up" and instructed him not to talk to her. (ECF No. 36-2 at 62, 66).

On December 4, 2015, Williams was placed on suspension pending investigation. (ECF No. 36-2 at 70). Thereafter, on December 10, 2015, Williams was given a "due process meeting," which Aria extends to its employees after certain disciplinary matters to allow employees to tell their side of the story. (ECF No. 36-2 at 70). The meeting was facilitated by Quezada, and was attended by Williams, Executive Room Chef Brendan Arenth, and a shop steward. (ECF No. 36 at 10). At that meeting, Williams admitted that she told Jiminez to "shut up" and "don't talk to me." (ECF No. 36-2 at 73).

Following the hearing, and considering all employee statements and testimony, Aria terminated Williams' employment on January 12, 2016. (ECF No. 36-2 at 76). The "Separation PAN" prepared by Aria, which details the basis upon which Williams was terminated, cites

> Misconduct; specifically, engaging in high unprofessional, rude and discourteous behavior, where [she was] loud and demeaning in nature as well [as] engag[ed] in behavior that is in direct violation of the final warning issued on 4/24/15.

(ECF No. 36-2 at 76).

On January 23, 2017, Williams submitted a charge of discrimination (the "charge") with the Equal Employment Opportunity Commission ("EEOC"). (ECF No. 36-2 at 79). In her charge, Williams contends she was discriminated against based on her gender and race and that she was retaliated against for participating in a human resources investigation. *Id.* She also claims she was

subjected to harassment by co-workers Reed, Tian, Baptista, and Jimenez. *Id.* She claims each of these co-workers made racially and sexually offensive comments about her, threatened her, and made fun of her. *Id.* On February 24, 2017, the EEOC issued a "dismissal and notice of rights," stating that it was "unable to conclude the information obtained established violations of the statutes." *Id.* at 80.

Thereafter, Williams filed the instant suit on May 24, 2017, alleging six causes of action for: (1) unlawful retaliation under Title VII; (2) unlawful gender discrimination under Title VII; (3) unlawful race discrimination under Title VII; (4) § 1981 civil rights violation; (5) assault and battery; and (6) negligent supervision.[5] (ECF No. 1). Aria now moves for summary judgment as to all of Williams' claims. (ECF No. 36).

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to

---

[5] Williams also asserted state law discrimination claims, which the court dismissed on January 31, 2018. (ECF No. 22).

its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. Discussion

As a preliminary matter, the court will deny as moot Aria's first motion for summary judgment, as Aria has filed an amended motion for summary judgment that addresses all of plaintiff's claims. (ECF No. 34). Accordingly, the court will now consider Aria's amended motion.

*a. Title VII claims*

Williams asserts three Title VII claims against Aria: (1) race discrimination; (2) gender discrimination; and (3) retaliation. (ECF No. 1). Aria submits that it is entitled to summary judgment on Williams' Title VII claims because she has failed to establish each of the requisite elements of a *prima facie* case. (ECF No. 36).

In evaluating both discrimination and retaliation claims under Title VII, courts use the *McDonnell Douglas* burden-shifting framework. *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010); *see also Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034-35 (9th Cir. 2006). Under this analysis, a plaintiff must first establish a *prima facie* case of employment discrimination. *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir.2007).

If a plaintiff establishes a *prima facie* case, "the burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Hawn*, 615 F.3d at 1156. If the defendant meets this burden, the plaintiff must then raise a triable issue of material fact as to whether the defendant's proffered reasons for termination are mere pretext for unlawful discrimination. *Noyes*, 488 F.3d at 1168.

*i. Race and gender discrimination*

Williams asserts her Title VII race discrimination claim on the premise that she was fired for engaging in workplace altercations with Reed, who made racial comments regarding her skin color. (ECF No. 41 at 23). As to her Title VII gender discrimination claim, Williams asserts that she was subjected to "inappropriate language and physical touching" by her co-workers and was later disciplined for failing to get along with her harassers. (ECF No. 41 at 20, 22).

To establish a *prima facie* claim of discrimination, a plaintiff must present evidence giving rise to the inference that (1) she is a member of a protected class; (2) she performed her job

U.S. District Judge

- 7 -

satisfactorily; (3) she suffered an adverse employment action; and (4) the employer treated her differently than similarly situated individuals who do not belong to the same protected class. *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003).

Aria concedes that Williams is a member of a protected class and was subject to an adverse employment action (termination). (ECF No. 36 at 19). However, Aria disputes that Williams performed her job satisfactorily or that it treated her differently than similarly situated individuals who are not a member of her protected class. *Id.* at 19–22.

In support of its position, Aria notes Williams' "extensive, well-documented history of performance problems," arguing that Aria had a legitimate, non-discriminatory reason to terminate Williams' employment. (ECF No. 36 at 19). Accordingly, Aria submits that Williams was not performing her job well enough to establish an essential element of a *prima facie* case of race discrimination. *Id.* (citing *Villiarimo v. Aloha Island Air Inc.*, 281 F.3d 1054, 1062–63 n.8 (9th Cir. 2002)).

Additionally, Aria submits that Williams cannot demonstrate that Aria treated other similarly situated employees more favorably than she was treated. (ECF No. 36 at 19). "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). Indeed, Aria points out that Reed, who is an "African American male cook," received the same "last and final warning" that Williams received as a result of their April 15, 2015, altercation. (ECF No. 36 at 20). Moreover, Aria asserts that Jiminez was not terminated as a result of his altercation with Williams because, unlike Williams, he did not have a "last and final warning" in his file. (ECF No. 36 at 20).

In her opposition, Williams does not dispute that she failed to perform her job satisfactorily, nor does she submit any argument or evidence that Aria treated her differently than a similarly situated employee who did not belong to the same protected class. *See* (ECF No. 41). Rather, Williams states in conclusory fashion that she has offered evidence of "severe and pervasive" sexual and racial harassment and should therefore be allowed to proceed to trial on her discrimination claims. *Id.* Such conclusory statements, provided without any citation to relevant authority or evidence, are insufficient to establish a *prima facie* case and defeat summary

- 8 -

judgment. *Noyes*, 488 F.3d at 1168. Accordingly, Aria's motion for summary judgment is granted with respect to Williams' Title VII race and gender discrimination claims.

   *ii.*  *Hostile work environment*

  Although not specifically pleaded as hostile work environment claims in Williams' complaint, the parties nevertheless address Williams' Title VII claims in the context of "hostile work environment" in addition to race and gender discrimination. *See* (ECF Nos. 1, 36, 41, 42). Accordingly, the court will address this theory of liability as to Williams' Title VII claims.

  To establish a *prima facie* hostile work environment claim under Title VII, an employee must prove that (1) she was subjected to verbal or physical conduct because of her race or gender; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of the employee's work environment and create an abusive work environment. *See Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995).

  The Supreme Court has affirmed its well-established standard that "takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury." *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993). "[M]ere utterance of an . . . epithet which engenders offensive feelings in [an] employee . . . does not sufficiently affect the conditions of employment to implicate Title VII." *Id.* (internal quotations omitted).

  Likewise, the Ninth Circuit has held that occasional instances of "offhand," offensive remarks are not sufficiently severe or pervasive enough to alter the conditions of a plaintiff's employment. *Manatt v. Bank of Am.*, 339 F.3d 792, 799 (9th Cir. 2003) (holding that several instances of offensive racial comments occurring over a span of two-and-a-half years, "coupled with other offhand remarks," did not alter the conditions of the plaintiff's employment). *See also Vasquez v. County of Los Angeles*, 307 F.3d 884, 893 (9th Cir. 2002) (finding no hostile environment discrimination where the employee was told that he had "a typical Hispanic macho attitude," that he should work in the field because "Hispanics do good in the field"); *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1111 (9th Cir. 2000) (finding no hostile work environment where the supervisor referred to females as "castrating bitches," and called plaintiff "Medea").

Aria notes that, in this case, Williams has identified one occasion where her coworkers were discussing amongst themselves why Williams' skin was so light (and Baptista referred to her as a "mutt"). (ECF No. 36-1 at 51). However, Williams also testified that none of her co-workers referred to her by name during this discussion. *Id.* Williams also described an instance where Reed muttered to himself, "she's not – she's not black. She's not black. She has green eyes." *Id.* Aside from these instances, Williams could not identify any other occasions on which her coworkers make comments about her race. *Id.* at 66. Finally, Williams identified two occasions on which male co-workers allegedly swiped her buttocks as they walked past her during work hours. (ECF No. 36-1 at 58–59)

Aria argues that these isolated instances are not severe and pervasive enough to support Williams' hostile work environment claim under the Ninth Circuit's prevailing standards. (ECF No. 36 at 24). The court agrees. Furthermore, as with Williams' race and gender discrimination claims, Williams does not cite any evidence to refute Aria's argument. *See* (ECF No. 41 at 22). Rather, Williams states in conclusory fashion that she has "offered evidence of pervasive and severe" harassment. *Id.* Yet, she does not identify any additional instances of such harassment. *See id.* Such conclusory statements are insufficient to defeat summary judgment. Accordingly, the court will grant Aria's motion for summary judgment as to Williams' hostile work environment claim.

### iii.     *Retaliation*

Williams submits that Aria unlawfully retaliated against her after she engaged in the protected activity of reporting her co-workers' alleged misconduct to Aria's human resources department in February of 2015. (ECF No. 41 at 19).

To establish a *prima facie* case of retaliation under Title VII, an employee must prove that (1) the employee engaged in a protected activity, (2) the employee suffered an adverse employment action, and (3) there was a causal link between the employee's protected activity and the adverse employment action. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034-35 (9th Cir. 2006).

The parties do not dispute that Williams engaged in a protected activity when she spoke to Owen about her co-workers' alleged misconduct in February 2015, nor that she was subject to an adverse employment action when she was terminated in January 2016. (ECF No. 36 at 25). However, Aria disputes that Williams has established the requisite "causal link" between these two events. *Id.* Therefore, Aria submits that it is entitled to summary judgment on this claim, as Williams has failed to establish a *prima facie* case for retaliation. *Id.*

Williams asserts that the causal link exists because she was given a "last and final warning" in April 2015 as the result of an altercation between herself and Reed, who was the subject of her HR complaint to Owen in February 2015. (ECF No. 41 at 19). Then, according to Williams, she was ultimately terminated for her December 2015 altercation with Jiminez, who was another "member of the core group of harassers." *Id.*

The Supreme Court has clarified the standard of proof with respect to causation, holding that "Title VII retaliation claims must be proved according to traditional principles of but-for causation . . . This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2533 (2013).

As Aria correctly notes, Williams cannot establish that her protected activity (reporting her co-workers' alleged misconduct to Owen) is the "but-for" cause of her termination. (ECF No. 42 at 20). First, Aria submits that Williams was fired for her numerous disciplinary issues, which finally culminated in her demonstrating "rude and discourteous" behavior on two occasions (eight months apart), the latest of which occurred approximately 11 months after her engaging in a protected activity. (ECF No. 42 at 20).

Moreover, Aria notes Williams' testimony that she never told any of her co-workers that she spoke with Owen in HR and had no basis for thinking that they had found out, other than her own speculation. (ECF No. 36-1 at 74–76). Therefore, the court finds that Williams' own testimony belies her argument that her co-workers' alleged harassment was in any way related to her speaking with Owen in February 2015. *See Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982) (establishing a causal link requires the retaliator's knowledge that the employee

engaged in a protected activity).  Indeed, if Reed, Tian, Baptista, and Jiminez were unaware that Williams had engaged in a protected activity, then the protected activity cannot be the reason for their alleged harassment.  It follows then that the altercations between Williams and her co-workers (which directly led to Williams' eventual termination) did not result from Williams' engaging in a protected activity.

Because Williams cannot establish a causal link between her protected activity and her eventual termination, the court grants summary judgment in favor of Aria as to this claim.

 *b. § 1981 claim*

The parties agree that claims arising under § 1981 are evaluated under the same analytical framework as claims arising under Title VII. *See Metoyer v. Chassman*, 504 F.3d 919, 930–31 (9th Cir. 2007). *See also* (ECF No. 36 at 19); (ECF No. 41 at 24).  Accordingly, because the court has granted summary judgment in favor of Aria on Williams' Title VII claims, it must also grant summary judgment in favor of Aria on Williams' § 1981 claim.

 *c. Assault and battery*

Aria argues that this claim should be dismissed as time-barred by the applicable statute of limitations for tort claims in Nevada. (ECF No. 36 at 15).  In Nevada, the statute of limitations for assault and battery claims is two years. Nev. Rev. Stat. § 11.190(4)(c).

In her response to Aria's motion, Williams confirms that her assault and battery claim is related to the incidents where Aria employees "inappropriately fondled" her buttocks. (ECF No. 41 at 25).  However, aside from the incidents that Williams describes in her February 10, 2015, email, she does not assert any other instances of inappropriate fondling.  However, although referenced only in passing, Williams also appears to base this claim on her allegation that Reed would frequently and intentionally "bump into" her during work hours. (ECF No. 36-1 at 102).

Because the incidents involving inappropriate fondling must have occurred prior to the February 10, 2015, email, the last date upon which she could have asserted a timely assault and battery claim was February 10, 2017.  As to Williams' allegation that Reed frequently bumped into her during work hours, Williams testified that she was not scheduled to work with Reed following the April 15, 2015, incident, and reported that the two never had any further interactions.

(ECF No. 36-1 at 104–105). Accordingly, the last date upon which Williams could have asserted a timely assault and battery claim as to these allegations was April 15, 2017.

Because Williams filed her complaint on May 24, 2017, the court holds that Williams' assault and battery claim is time-barred by the statute of limitations and must be dismissed. *See* (ECF No. 1).

    *d. Negligent supervision*

Finally, Williams asserts a claim for negligent supervision based on Aria management's alleged failure to stop the "ongoing campaign of harassment that they observed occurring" against her. (ECF No. 41 at 28).

Aria argues that this claim is preempted by Nevada's employment practices statute, NRS 613.330 *et seq.* Indeed, this court and the Supreme Court of Nevada have held that NRS § 613.330 *et seq.* "provides the exclusive remedy for tort claims premised on illegal employment practices." *Brinkman v. Harrah's Operating Co., Inc.*, 2008 U.S. Dist. LEXIS 123992, at *5 (D. Nev. Oct. 16, 2008); *see Sands Regent v. Valgardson*, 105 Nev. 436, 777 P.2d 898, 900 (Nev. 1989); *D'Angelo v. Gardner*, 107 Nev. 704, 819 P.2d 206, 217 n.10 (1991).

Williams does not address Aria's preemption argument in her response to Aria's motion. *See* (ECF No. 41). Rather, Williams restates the instances of alleged sexual and racial harassment that form the factual basis of her negligent supervision claim and asserts that she has provided ample evidence to support the elements of a state law claim for negligent supervision.

Because the factual basis for Williams' negligent supervision claim stems from the same allegations that support her Title VII discrimination claims, the court finds that this claim is preempted by Nevada's employment practices statute. *See* Nev. Rev. Stat. § 613.330 *et seq.* Accordingly, Aria's motion for summary judgment is granted as to Williams' negligent supervision claim.

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Aria's amended motion for summary judgment (ECF No. 36) be, and the same hereby is, GRANTED.

1    IT IS FURTHER ORDERED that Aria's first motion for summary judgment (ECF No. 34)
2 be, and the same hereby is, DENIED as moot.
3    The clerk of court is instructed to enter judgment accordingly and close the case.
4    DATED June 28, 2019.

_____
UNITED STATES DISTRICT JUDGE